# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ROLLS-ROYCE MOTOR CARDS LIMITED and ROLLS-ROCE MOTOR CARS NA, LLC,** | Civ. No. 15-0417 (KM) |
| **Plaintiff,** | **OPINION** |
| **v.** | |
| **ROBERT D. DAVIS, dba ROLLS ROYCE RIZZY,** | |
| **Defendant.** | |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiffs, Rolls-Royce Motor Cars Limited and Rolls-Royce Motor Cars NA, LLC, (together "Rolls-Royce"), bring this suit against defendant Robert D. Davis (a/k/a "Rolls Royce Rizzy") related to infringement of Rolls-Royce's trademarks. Plaintiffs assert claims for trademark dilution, trademark infringement, and unfair competition/false designation of origin under the Lanham Act, 15 U.S.C. § 1051 *et seq.* Plaintiffs also assert claims under New Jersey statutory and common law. (Dkt. No. 1 ("Cplt."))

Before the Court is plaintiffs' unopposed motion for default judgment (Dkt. No. 9). For the reasons discussed below, I will partially grant the motion for default judgment.

## I. BACKGROUND

Plaintiff Rolls-Royce Motor Cars Limited is a company organized under the laws of England with its principal place of business in England. (Cplt. ¶ 3) It distributes Rolls-Royce vehicles to Rolls-Royce Motor Cars NA, LLC. (*Id.*) Rolls-Royce Motor Cars NA, LLC is a Delaware limited liability company with its principal place of business in New Jersey. (Cplt. ¶ 4) It is responsible for the

1

wholesale distribution of Rolls-Royce vehicles throughout the U.S. (*Id.*) Defendant Davis resides in Georgia. He is a musician who "records, offers, and sells his music under the stage name 'Rolls Royce Rizzy.'" (Cplt. ¶ 5)

Rolls-Royce Motor Cars Limited owns three U.S. registered trademarks relevant to this action—two "ROLLS-ROYCE" trademarks (Reg. Nos. 325,195, 3,148,743) and one "RR Badge" trademark (Reg. No. 197,089). (Cplt. ¶ 10) Rolls-Royce Motor Cars NA, LLC is licensed to use the trademarks in connection with the distribution and sale of Rolls-Royce vehicles. (Cplt. ¶ 12) The ROLLS-ROYCE trademarks have been used in the U.S. in connection with automobiles since 1935; the RR badge has been in use since 1905. (Cplt. ¶ 13-14) Plaintiffs allege that these trademarks are "famous and distinctive" and that one way Rolls-Royce makes use of the marks is by licensing them. (Cplt. ¶ 18, 15)

Plaintiffs allege that Davis records and sells music under the stage name "Rolls Royce Rizzy" and that he advertises his music under that name on his YouTube channel. (Cplt. ¶ 19) They also contend that Davis sells shirts that contain the words "Team Rolls Royce" through his online store, http://rollsroyceerizzy.spreadshirt.com. (*Id.*) They also allege that he makes use of the RR Badge. (*See* Cplt. ¶ 22)

Plaintiffs sent Davis multiple cease and desist letters requesting that he stop using the stage name "Rolls Royce Rizzy" and instructing him to discontinue any other use of plaintiffs' marks. (Cplt. ¶ 20) Plaintiffs contend that Davis has nevertheless continued using their marks—for example, by posting a photograph on Instagram wearing a "Team Rolls Royce" shirt and a cap displaying the RR badge. (Cplt. ¶ 22) Plaintiffs also allege that Davis posted references to this lawsuit on Instagram. (Dkt. No. 9-2 ¶ 16) He continues to use the stage name "Rolls Royce Rizzy." (Dkt. No. 9-2 ¶ 17)

Plaintiffs do not request any money damages. Rather, they ask the court for a permanent injunction, restraining Davis from using their trademarks. They also ask the Court to order defendant to remove any such trademarks from his business and website and file with the Court an order setting forth his

compliance. (*See* Dkt. No. 9-4 pp. 2-3)

## II. DISCUSSION

### A. Entry of Default Judgment

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher,* Civ. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar.14, 2006) (citing Wright, Miller, Kane, 10A Federal Practice and Procedure: Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, Civ. No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F.Supp.2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at * 2.

### 1.    Prerequisites

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir.

1985); FED. R. CIV. P. 12(a).

Here, Davis was properly served and has failed to respond to the complaint. (*See* Dkt. No. 9-2 ¶ 10) Defendant's time to respond to the complaint has long since expired. Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist, Inc.*, 756 F.2d at 18–19.

### 2.  Default judgment factors

I must now evaluate the following three factors: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). These factors weigh in favor of entry of a default judgment as to certain of plaintiffs' alleged causes of action.

### a.  Meritorious Defense

As to the first factor, I am disadvantaged, of course, by the lack of any submission by the defendant, but I will review the record that is before me. *See Coach, Inc. v. Bags & Accessories*, Civ. No. 10-2555, 2011 WL 1882403, at *6 (D.N.J. May 17, 2011) ("Because the Defendants did not respond, the Court cannot determine whether the Defendants had meritorious defenses that are not reflected in the record."). Accepting the factual allegations as true, as I must, I am satisfied that plaintiffs have stated certain of their claims for relief. I find that plaintiffs are entitled to judgment on their claims for trademark dilution under federal and state law (Counts I and IV). My independent review of the record has not revealed any reason to believe that these claims are legally flawed or that there is a meritorious defense to them. *See Doe*, 2013 WL 3772532, at * 5. I will decline to grant plaintiffs judgment as to their remaining claims.

4

### i. Trademark Infringement, Unfair Competition, and False Designation of Origin

Under the Lanham Act Section 32, 15 U.S.C. Section 1114(1):

> (1) Any person who shall, without the consent of the registrant--
>> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive
>> ...
>> Shall be liable in a civil action by the registrant . . . .

15 U.S.C.A. § 1114(1)(a). Furthermore, the Lanham Act Section 43(a) proscribes unfair competition or, as the statute refers to it, "false designation of origin" or "false description." 15 U.S.C.A. § 1125(a). The statute provides that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ...
>> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a)(1)(A).

To state a claim for trademark infringement, 15 U.S.C. § 1114(1), and unfair competition/false designation of origin, 15 U.S.C. § 1125(a)(1), under the

Lanham Act, a plaintiff must show three elements: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards"); *See also Chanel, Inc. v. Matos,* Civ. No. 14-3509, 2015 WL 4773072, at *10 n.6 (D.N.J. Aug. 13, 2015) ("Courts in the Third Circuit consider claims for trademark infringement and for false designation of origin under an identical standard.") (citing *A&H Sportswear*). A plaintiff bears the burden of proving these elements.

As to the first element, plaintiffs have alleged ownership of three trademarks and provide registration numbers and the date of registration for each. (*See* Cplt. ¶ 10) Plaintiffs allege that the registrations "were duly and legally issued, are valid and subsisting, and are incontestable pursuant to 15 U.S.C. § 1605." (*Id.* ¶ 11) They have also provided the certificates of registration. (*See* Dkt. No. 11) A "certificate of registration issued by the United States Patent and Trademark Office constitutes prima facie evidence of the validity and ownership of a disputed mark." *Coach, Inc. v. Cosmetic House*, Civ. No. 10-2794, 2011 WL 1211390, *2 (D.N.J. Mar. 29, 2011) (certificate of registration by U.S. Patent and Trademark Office is sufficient to establish the first and second elements of trademark infringement and unfair competition claims). As such, I am satisfied that the first two elements are met.

As to the third element, a "likelihood of confusion" exists where "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Coach,* 2011 WL 1211390, at *3 (quoting *Ford Motor Co. v. Summit Motor Prods.*, Inc., 930 F.2d 277, 292 (3d Cir. 1991)). Courts consider a variety of factors when assessing whether two marks are likely to cause consumer confusion. In this Circuit these factors include, but are not limited to

6

> (1) the degree of similarity between the owner's mark and the
> alleged infringing mark; (2) the strength of the owner's mark; (3)
> the price of the goods and other factors indicative of the care
> and attention expected of consumers when making a purchase;
> (4) the length of time the defendant has used the mark without
> evidence of actual confusion arising; (5) the intent of the
> defendant in adopting the mark; (6) the evidence of actual
> confusion; (7) whether the goods, though not competing, are
> marketed through the same channels of trade and advertised
> through the same media; (8) the extent to which the targets of
> the parties' sales efforts are the same; (9) the relationship of the
> goods in the minds of consumers because of the similarity of
> function; (10) other factors suggesting that the consuming
> public might expect the prior owner to manufacture a product
> in the defendant's market, or that he is likely to expand into
> that market.

*Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 471 (3d Cir. 2005)
(quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983)). The
Third Circuit has "repeatedly insisted that the *Lapp* factors are not to be
mechanically tallied, but rather that they are tools to guide a qualitative
decision." *A & H Sportswear, Inc.*, 237 F.3d at 216. Reviewing those factors, I
find that they point in both directions. Overall, I cannot find that defendant's
use of the allegedly infringing marks is likely to cause consumer confusion.

   "The single most important factor in determining likelihood of confusion
is mark similarity." *Id.* Marks are confusingly similar if "ordinary consumers
would likely conclude that [the two products] share a common source,
affiliation, connection, or sponsorship." *Id.* (quoting *Fisons Horticulture, Inc. v.
Vigoro Indus., Inc.*, 30 F.3d 466, 477 (3d Cir. 1994)). Where the goods or
services are not in direct competition, as is the case here, the degree of

similarity required to prove likelihood of confusion is higher than for similar products. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 713 (3d Cir. 2004) (citation omitted). Here, Rolls-Royce has demonstrated that Davis is using marks—not just similar to—but, in fact, identical to their marks. Therefore, this element weighs strongly in favor of plaintiffs.

Plaintiff also alleges that the marks are "famous and distinctive." (Cplt. ¶ 18) To evaluate this factor, a court must "examine: (1) the mark's distinctiveness or conceptual strength (the inherent features of the mark) and (2) its commercial strength (factual evidence of marketplace recognition)." *Freedom Card, Inc.*, 432 F.3d at 472 (citation omitted). "The conceptual strength of a mark is measured by classifying the mark in one of four categories ranging from the strongest to the weakest: "(1) arbitrary or fanciful (such as "KODAK"); (2) suggestive (such as "COPPERTONE"); (3) descriptive (such as "SECURITY CENTER"); and (4) generic (such as "DIET CHOCOLATE FUDGE SODA")." *Id.* To determine commercial strength, courts examine the marketplace recognition of the trademark.

I find that Rolls-Royce's marks are conceptually strong. They appear to fall into the strongest conceptual category of arbitrary or fanciful marks. *See ProFoot, Inc. v. MSD Consumer Care, Inc.*, Civ. No. 11-7079, 2012 WL 2262904, at *8 (D.N.J. June 14, 2012)("Arbitrary or fanciful marks use terms that neither describe nor suggest anything about the product; they bear no logical or suggestive relation to the actual characteristics of the goods."). The marks are certainly not descriptive or generic; at the very least they are suggestive (perhaps "Rolls" weakly suggests the idea of wheels on pavement, but it is also someone's name).

With respect to commercial strength, plaintiffs allege that the marks are "well known and unique and are identified by the public solely with Plaintiffs and their products and services." (Cplt. ¶ 17) Plaintiffs assert that the marks have been used for nearly a century around the world, and that they spend "large sums of money for worldwide advertising" of their products. (*Id.*)

Commercial strength is also implied by plaintiff's allegations that they license their marks. (Cplt. ¶ 15) While specific figures would help to support plaintiffs' contentions (for example, sales numbers, company valuation, etc.), I will accept that the Rolls-Royce marks have commercial viability.

As to the third factor (purchasers' care and sophistication), I find that this factor points in favor of Davis. *See Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 186 (3d Cir. 2010) (noting that "courts have found there is not a strong likelihood of confusion … [w]here the relevant products are expensive, or the buyer class consists of sophisticated or professional purchasers") (internal quotations and citation omitted). Rolls-Royce vehicles are high-end, luxury cars that are expensive (prohibitively so for most of the general public). Accordingly, I must assume that individuals in the market to purchase such vehicles exercise a higher standard of care than the average consumer and would therefore be less susceptible to confusion by Davis's use of the marks.[1]

In regard to the fifth factor, Davis's intent in using the marks, I find that this factor points in both directions but ultimately favors Davis. "Plaintiffs allege that Davis "intends by his unauthorized use of the Rolls-Royce mark and RR Badge to trade off the goodwill of Plaintiffs' business." (Cplt. ¶ 25) I agree that plaintiff appears to have intentionally used exact replicas of plaintiffs' marks to promote his music career. In addition, the evidence supports plaintiffs' contention that Davis continued to do so even after plaintiffs informed him of their ownership. (*See* Cplt. ¶ 20-22) I am also inclined to agree that Davis intended to benefit from the reputation and high-end luxury image of Rolls-Royce, *i.e.*, their "goodwill" (I assume this is why he adopted their

---

[1]     The fourth and sixth factors are the length of time the defendant has used the mark without evidence of actual confusion arising and the evidence of actual confusion. Though evidence of actual confusion is not required, such evidence is "highly probative of a likelihood of confusion." *Sabinsa Corp.*, 609 F.3d at 187. The record does not contain evidence relating to either factor. This may be because plaintiff has not had the opportunity to conduct discovery as to actual confusion due to Davis's lack of appearance in this case. In any event, I do not grant these factors weight in my analysis.

marks and not a lesser brand of vehicle). However, "[a] defendant's mere intent to copy" without "intent to *confuse* customers" is not enough to find in plaintiff's favor. *Sabinsa Corp.*, 609 F.3d at 187 (emphasis in original) (internal quotations and citation omitted). Plaintiffs have not demonstrated that Davis intended to cause confusion about his relationship with Rolls-Royce. In addition, Davis posting about the litigation on social media would seem to undercut that argument. (*See* Dkt. No. 9-2 ¶ 16). Therefore, because plaintiffs have not demonstrated an intent to confuse, I find that this factor leans slightly in favor of Davis.

The seventh, eighth, and ninth factors address the "nature of the services provided, the customers targeted, and the methods used to reach those customers." *Primepoint, L.L.C. v. PrimePay, Inc.*, 545 F. Supp. 2d 426, 444 (D.N.J. 2008) (addressing these factors together). These factors weigh in Davis's favor. The "greater the similarity in advertising and marketing campaigns, the greater the likelihood of confusion." C*heckpoint Sys., Inc.*, 269 F.3d at 288–89. "When the parties target their sales efforts to the same group of consumers, there is a greater likelihood of confusion between two marks." *Sabinsa Corp.*, 609 F.3d at 188. The parties operate in entirely separate industries and offer dissimilar products and services. There is no evidence that the parties target their sales efforts to the same market segment, or that the parties use the same methods of promotion to target these consumers; in fact, the evidence tends to point in the opposite direction. (*See* Dkt. Nos. 1-2; 9-2 Ex. 7-8). Overall, these factors do not lead me to believe that Davis's use of the marks would cause consumer confusion.

Upon review of the relevant factors, I find that plaintiffs have not established a likelihood of confusion due to Davis's use of the marks. The most likely risk of confusion, in my view, is the risk that a consumer may believe that there is an "association," "sponsorship," or relationship of "approval" between Rolls Royce and Davis. 15 U.S.C.A. § 1125(a)(1)(A). For example, Davis's actions could lead an unsuspecting consumer to believe he has obtained permission from Rolls-Royce to use their marks, or perhaps even that

Rolls-Royce affirmatively requested that Davis use their marks in order to promote the Rolls-Royce brand. I sympathize with plaintiffs' desire to dispel this notion. However, I find that the risk of any confusion is fatally undercut by (1) the sophistication of Rolls-Royce customers and (2) the dissimilarity of the products at issue. In short, plaintiffs have not established any real risk of consumer confusion. Accordingly, I will not enter final judgment on plaintiffs' claims of trademark infringement, unfair competition, and false designation of origin under the Lanham Act (Counts II and III).

In addition, I find the same with respect to plaintiffs' claims for unfair competition under New Jersey's statute, N.J.S.A. 56:4-1,[2] and trademark infringement and unfair competition under common law. *See N.V.E., Inc. v. Day*, No. 07 Civ. 4283, 2009 WL 2526744, at *2 (D.N.J. Aug. 18, 2009) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d Cir. 1994)) ("By virtue of … Lanham Act violations," the defendant "also established its common law and state law claims for unfair competition."); *Coach, Inc.*, 2011 WL 1882403, at *5 ("[L]iability for common law trademark infringement is established when a defendant violates the federal Lanham Act for trademark infringement.") I will decline to enter default judgment as to these claims (Counts V and VI). Much of this analysis, however, is relevant to trademark dilution, as to which I will award a default judgment.

### ii. Trademark Dilution

I move on to what I regard as the stronger claim: trademark dilution. 15 U.S.C. Section 1125(c) of the Lanham Act, Section 43, provides:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous

---

[2]   N.J.S.A. 56:4-1 provides that "[n]o merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals."

mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1). The statute defines a famous mark as a mark that is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." § 1125(c)(2)(A). Furthermore, Section 1125(c)(2)(B) defines "dilution by blurring" as "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." Section 1125(c)(2)(C) defines "dilution by tarnishment" as an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark."

"The federal cause of action for trademark dilution grants extra protection to strong, well-recognized marks even in the absence of a likelihood of consumer confusion—the classical test for trademark infringement—if the defendant's use diminishes or dilutes the strong identification value associated with the plaintiff's famous mark." *Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 163 (3d Cir. 2000). The Third Circuit has provided that a plaintiff must prove the following elements to establish a prima facie claim under the federal dilution statute:

> 1. The plaintiff is the owner of a mark that qualifies as a "famous" mark in light of the totality of the eight factors listed in § 1125(c)(1),
> 2. The defendant is making commercial use in interstate commerce of a mark or trade name,
> 3. Defendant's use began after the plaintiff's mark became famous, and
> 4. Defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services.

*Id.*

As discussed *supra*, plaintiffs have provided evidence of the first element.

12

That evidence consists of trademark registrations establishing ownership of a valid and legally protectable mark. *See* Cplt. ¶¶ 10-11; Dkt. No. 11; s*ee also Coach,* 2011 WL 1211390, at *2. As to whether the marks are famous under 15 U.S.C. § 1125(c)(1), I find that they are. The Third Circuit has considered the following factors when determining whether a mark is distinctive or famous:

> (A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought; (G) the nature and extent of use of the same or similar marks by third parties.

*Id.* (citing 15 U.S.C. § 1125(c)(1)(A)-(H)).

I take judicial notice that the name "Rolls-Royce" is well established and very well known. Plaintiffs' marks are distinctive, as outlined in the preceding section discussing infringement, *supra*. In addition, plaintiffs allege that they have spent "well over three quarters of a century producing goods and rendering services recognized in the United States and throughout the world to be of the highest quality." (Cplt. ¶ 16) They assert that they have "continuously" used the ROLLS-ROYCE marks and RR Badge since 1935 and 1905, respectively. (Cplt. ¶¶ 12-13) As a result, plaintiffs say, their trademarks "have become well known and unique and are identified by the public solely with Plaintiffs and their products and services." (Cplt. ¶ 17) Plaintiffs contend that they "enjoy an exceedingly valuable reputation" around the world both with purchasers of their products as well as other members of the public. (Cplt. ¶ 18). In sum, plaintiffs allege that their trademarks are "famous and distinctive." (*Id.* ¶ 19) I note that Davis's choice to use Rolls-Royce's marks to

13

promote his music career would itself tend to corroborate plaintiffs' point. In short, I find that the marks are famous within the meaning of the statute.

The second element is defendant's use of the mark "in interstate commerce." *See Times Mirror Magazines, Inc.*, 212 F.3d at 163. Even in the case of a default judgment, there must be some showing, but the "quantum of commercial activity needed to demonstrate interstate commerce is not great," *Coach, Inc.*, 2011 WL 1882403, at *4. Congress intended to regulate to the Constitutional limit. *See* 15 U.S.C. § 1127 ("The word 'commerce' means all commerce which may lawfully be regulated by Congress"). Thus, even an intra-state infringement may be reached under the Lanham Act if it has "a substantial effect, economic or otherwise, upon plaintiff's interstate use of the mark." *See* McCarthy on Trademarks §§ 25:56. Here, plaintiffs allege that Davis is a musician, that he employs the stage name "Rolls Royce Rizzy," that he advertises his recordings under that name on his YouTube channel, and that he sells "Team Rolls Royce" shirts in his online store. (Cplt. ¶ 19) These activities, by their very nature, involve interstate commerce.

I also am satisfied that the third element of plaintiff's prima facie case of dilution is met. According to plaintiffs, Davis began using their trademarks after the marks became famous. (*See* Cplt. ¶ 16, 20-23). The record supports such a contention. The marks have been registered since 1905 and 1935, and plaintiffs' allegations about Davis's misuse of the marks stem from conduct in 2014. (*See* Cplt. ¶¶ 13-14, 19-22)

Finally, I find that that the fourth element, that "Defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services," is met. *Times Mirror Magazines*, 212 F.3d at 163. Dilution occurs when there is "blurring" or "tarnishing" of the trademark. *World Wrestling Fed'n Entm't Inc. v. Big Dog Holdings, Inc.*, 280 F. Supp. 2d 413, 441 (W.D. Pa. 2003). Blurring occurs when defendant's use of the mark "causes the identifying features of plaintiff's mark to become vague and less distinctive." *Id.* (citing *Times Mirror Magazines Inc. v. Las Vegas Sports News*, 212 F.3d 157, 163 (3d Cir. 2000). Defendant's use of the mark lessens

plaintiff's ability to use the mark to "serve as a unique identifier" of its product. *Id*. Tarnishment "occurs when the effect of defendant's use of a mark is to dilute by tarnishing or degrading positive associations of the mark and diluting the distinctive quality of the mark." *Id*. at 442 (citing McCarthy on Trademarks and Unfair Competition § 24.95). "A mark is tarnished, therefore, when it is improperly associated with an *inferior* or *offensive* product or service … presenting a danger that customers will form unfavorable associations with the mark." *Id*. at 443 (emphasis in original) (quoting *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 881 (9th Cir. 1999) (internal quotations and citation omitted); *See also Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996)("The sine qua non of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use.").

Here, plaintiffs base their dilution claim on allegations that they have "suffered damage to the goodwill associated with their ROLLS-ROYCE trademark and RR Badge." (Cplt. ¶ 32) Plaintiffs assert that they have a "valuable reputation" in the U.S. and around the world, and they argue that if defendant's actions continue, he will "irreparably harm Plaintiffs and the goodwill they enjoy under their marks." (Dkt. No. 9-1 pp. 4-5) This appears to be a claim based on tarnishment. I find that plaintiffs have sufficiently alleged their tarnishment claim.

Specifically, plaintiffs have submitted materials from Davis's social media account, advertisements, and promotional materials that reflect language and imagery that could create negative associations with plaintiffs' products. *Hormel*, 73 F.3d at 507. For example, plaintiffs have submitted an advertisement for an event "hosted by Rolls Royce Rizzy," entitled "Call of Booty," which features a scantily-clad woman and advertises a "Booty Shaking Contest." (Dkt. No. 1-2 p. 14) Plaintiffs have submitted other materials that promote "Rolls Royce Rizzy" and reference his "hit singles" entitled "Gah Damn" and "Hoe in You." (Dkt. No. 9-3 p. 62) The apparent cover of Davis's album, also advertised under the name "Rolls Royce Rizzy," is named "Pimp'n" and features a parental advisory for explicit lyrics. (*Id*. p. 73) Under these facts, I

find that plaintiffs have met the fourth element of their prima facie case of dilution under a tarnishment theory.

In addition, "Courts in this district have found liability under federal law to be sufficient to establish liability under state law." *Coach, Inc. v. Cosmetic House*, Civ. No. 10-2794, 2011 WL 1211390, at *5 (D.N.J. Mar. 29, 2011); *See also 800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 294 (D.N.J. 2006) ("Dilution claims under New Jersey law are subject to the same considerations as federal dilution claims.").

Accordingly, I will enter default judgment as to plaintiffs' claim of federal trademark dilution under the Lanham Act (Count I), as well as New Jersey law (Count IV).

### iii. Unjust enrichment

Under New Jersey law, to establish unjust enrichment, a plaintiff must show (1) "that defendant received a benefit" and (2) "that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994) (internal citations omitted); *Alboyacian v. BP Prods. N. Am.*, Civ. No. 01-5143, 2011 WL 5873039, at *4 (D.N.J. Nov. 22, 2011). Plaintiffs allege in very general terms that Davis "is making use of, and profiting from, Plaintiffs' ROLLS-ROYCE and RR Badge mark without permission from Plaintiffs." (Cplt. ¶ 60) However, plaintiffs have not set forth any facts establishing that Davis has profited as a musician as a direct result of his use of the Rolls-Royce marks (as opposed to his talent or business acumen); nor have they alleged any facts suggesting to what degree or in what amount they believe Davis has been unjustly enriched; nor have they stated how a benefit was conferred on defendant with the expectation of payment. In addition, I note that plaintiffs are not requesting monetary damages in this action, only injunctive relief. (*See* Dkt. No. 9 p. 8)

Accordingly, I will not enter default judgment as to plaintiffs' claim of unjust enrichment, which in any event is superfluous. (Count VII).

### b. Prejudice suffered by the party seeking default

Second, I am persuaded that plaintiffs would suffer prejudice if default judgment were denied. Davis was properly served over a year ago, yet failed to appear or defend himself in any manner. *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, Civ. No. 11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011); Dkt. No. 9-2 ¶ 10. Given defendant's continued infringement and refusal to respond to the complaint (other than poking fun at it on social media), I find that plaintiffs would suffer ongoing harm and prejudice if a default judgment were denied. (*See* Dkt. No. 9-2 ¶ 17) Plaintiffs have been prejudiced by defendant's failure to answer because they have incurred additional costs and attorneys' fees associated with protecting their rights and because Davis's failure to appear has impeded plaintiffs' ability to proceed in this action, including its ability to gain access to relevant discovery. It would be inequitable to allow Davis to preclude plaintiffs' requested relief by simply failing to appear.

### c. Culpability of the party subject to default

Third, absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in its default. There is nothing before the Court to show that the Defendant's failure to file an answer was not willfully negligent." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023, at *4 (citing *Prudential Ins. Co. of America v. Taylor*, Civ. No. 08–2108, 2009 WL 536403 at *1 (D.N.J. February 27, 2009) (finding that when there is nothing before the court to suggest anything other than that the defendant's willful negligence caused the defendant to fail to file an answer, the defendant's conduct is culpable and warrants default judgment). Defendant was served with the complaint back on January 16, 2014. (*See* Dkt. No. 9-2 ¶ 10) Defendant has not responded. Again, I note that it is clear that Davis is aware of plaintiffs' suit based on his social media activity. (*See* Dkt. No. 9-2 ¶ 16) The obvious conclusion is that Davis is culpable for this failure and unable to offer a plausible defense.

Accordingly, I find that the entry of a default judgment is appropriate as to Counts I and IV.

### B. Remedies

Plaintiffs request that the Court enter a permanent injunction against Davis enjoining him from any further use of their marks.

The Supreme Court requires, in general, that any plaintiff seeking a permanent injunction show

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citations omitted). The Court may issue a permanent injunction in the context of a default judgment where these requirements are met. *See Coach, Inc. v. Ocean Point Gifts*, Civ. No. 09-4215, 2010 WL 2521444, at *10 (D.N.J. June 14, 2010). The Lanham Act in particular contains a specific statutory authorization for permanent injunctive relief to prevent or restrain trademark dilution. 15 U.S.C. § 1116(a). I find that a permanent injunction is warranted here.

First, I find that plaintiffs would suffer irreparable injury if Davis were to continue use of their marks. Plaintiffs allege that Davis continues to use their marks and that allowing him to do so will "undermin[e] Plaintiffs' ability to control their reputation and threaten[] the goodwill they have established in their marks." (Dkt. No. 9 p. 12) This Circuit has recognized that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Kos Pharm., Inc.*, 369 F.3d at 726 (quoting *Pappan Enters., Inc. v. Hardee's Food Sys.*, Inc., 143 F.3d 800, 805 (3d Cir. 1998)).

I also find that an injunction is appropriate here because monetary damages are inadequate to compensate for dilution of plaintiff's marks, particularly where it is ongoing. *See Opticians Ass'n of Am. v. Indep. Opticians*

*of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) (reasoning, in the context of a preliminary injunction, that "[g]rounds for finding irreparable injury include loss of control of reputation, loss of trade, and loss of good will"). The remedy of injunctive relief will protect plaintiffs against the threat of future tarnishment of their marks, a threat that cannot be averted by compensatory relief alone. *See Coach, Inc.*, 2011 WL 1882403, at *9 (citation omitted).

In balancing the hardships, I find that equity indeed warrants the relief plaintiffs seek. Defendant will not be unduly burdened by an injunction. The only "hardship" imposed upon Davis is that he refrain from engaging in unlawful conduct. *Id.* Moreover, defendant has continued his infringing behavior even upon notification of plaintiffs' protected marks. Finally, I find that the public interest would not be disserved by issuing an injunction. To the contrary, the public can only benefit from the cessation of illegal conduct. There is certainly a public interest in a truthful and accurate marketplace. *See Kos Pharm., Inc.*, 369 F.3d at 730.

Accordingly, I will grant plaintiffs the following injunctive relief:

Defendant, his partners, officers, agents, servants, representatives, employees, successors, and all other persons in active concert or participation with defendant, are hereby permanently enjoined and restrained from the following:

a. Using the name "Rolls Royce Rizzy" or any other reproduction, copy, or colorable imitation of the ROLLS-ROYCE mark in any manner in connection with the conduct of his business, either alone or in conjunction with other words;

b. Wearing or otherwise displaying or using the RR Badge in any manner in connection with his business;

19

c. Making any other representation or taking any other action likely to dilute, or to confuse, mislead, or deceive others into believing that defendant, or his products or services, come from or are connected with, sponsored by, or approved by plaintiffs.

In addition, defendant is directed to:

a. Obliterate, delete, and remove the ROLLS-ROYCE name and mark and RR Badge from his websites, business offices, stationery, telephone and other listings, signs, advertising, promotional material, and wherever else the same appear and to destroy or surrender to plaintiffs any and all materials in his possession or subject to his control wherein the name "ROLLS-ROYCE" and RR Badge and any other Rolls-Royce marks may appear;

b. Change his stage/trade name and his internet domain name and to cause the cancellation, withdrawal, or amendment of all filings, licenses, and permits issued by or with federal, state, or local governmental authorities or agencies so as to omit the name ROLLS-ROYCE, or any reproduction, copy, counterfeit, or colorable imitation thereof, from his business.

### III. CONCLUSION

For the foregoing reasons, default judgment will be entered in favor of plaintiffs as to their trademark dilution claims (Counts I and IV). The motion for default judgment is denied as to plaintiffs' remaining claims. An appropriate order is filed with this opinion.


Dated: March 11, 2016
Newark, New Jersey

**KEVIN MCNULTY**
**United States District Judge**

21